If it may please the court, my name is Herman Frank. I am the attorney for the plaintiff in the trial court and the appellant here, Ms. Josephine Okwu. And I appreciate the court's consideration of this matter. The best and simplest summary I can give the court on the kind of catch-22 my client finds herself in is, we would if we could. And it kind of goes like this. They're saying the ADA for employer actions creates a specific remedial scheme and that when Congress did that, it meant to preclude an action under the Federal Civil Rights Act. And I might add that that's a great idea. However, unfortunately ---- And we've held that to that effect in some other context, not for this title of the Act, but for the other title of the Act. Yes. And it's a fine rule. I, if I have a ---- And Congress could have said this applies directly to the States when it defined that remedy, couldn't it? Well, it kind of sort of did when it said the statutory ---- Well, you're not asserting that it did because you're not trying to proceed with the claim directly. You're trying to proceed through the back door. And I'll tell you, just so you know, the only reason I'm going through the back door is because the front door is closed. But that brings me to the problem, which is the front door is closed and you're trying to say, so Congress meant to open the back door, but they could have opened the front door and didn't. So why should we draw this inference that you've got a remedy through this other door over here when Congress elected not to open the front door and give it to you directly? Because they did expressly intend to open the front door because they granted statutory immunity under the Eleventh Amendment, or they undid it, and the Supreme Court ruled that that was invalid. So let's all keep in mind here that there is an express statement by Congress that, you know, we have a Federal law. It's a great idea. You know, disability discrimination is hereby outlawed. Wonderful idea. If this Court upholds the trial court, let's be clear about this. You're really letting the States off the hook. Because without a doubt, the State — there is no remedy if the State violates the ADA. They have Eleventh Amendment immunity. It kind of goes like this. Under — Are there no State statutes? State law does provide a kind of parallel concept. But the fact that there may be a State remedy should not be a vehicle towards saying, well, we're going to nullify. Not nullify, but we're not letting them off the hook, either, if there's a State remedy. Well, here's the problem with that. There are many people, and my client is one of them, who believe that the State courts are not trustworthy and are not good places to be. Well, a lot of people believe it's a better place to be than the Federal courts. Well, there's a difference of opinion. I agree with you on that. I'm kind of in the middle on that one. I'm not sure which is better. But I'd rather be in Europe. But my client, who was fired by the State, has kind of an issue of, can we not go to State of California places and go to Federal court where I think I can get a better neutral evaluation of what happened to me? That's her judgment call. And that's why she's been focusing on her Federal remedies. Under the employment part of the ADA, unfortunately, you can only sue the State. You've got to sue the employer. And the Supreme Court has ruled that the Eleventh Amendment immunity, the attempt by Congress to abrogate it, was for some reason invalid. And I – it's kind of an interesting ruling, but I'm not here to really question it. And as much as they allowed the abrogation under – in a non-employment context, it's kind of a schizophrenic ruling, but I guess the Supreme Court does that every now and then. So she must sue the employer, which is the State. She can sue in Federal court, except it's been ruled that you can't because of Eleventh Amendment immunity. Then you try to backdoor it, and I agree with you quite plainly. It's a backdoor attempt. And we go into the Federal statute, Federal civil rights statute, and we claim two theories on that, which is equal protection violation. And I cite some cases that support that. Discrimination based on disability, discrimination based on gender, these kind of things can constitute a due process in an equal protection clause violation. I see that on page 21 of my brief. And then the Court rules, no, you can't because you've got a well-thought-out statutory remedy under the ADA. Only she doesn't. So she's left with kind of a big hole here. You know, I can't proceed under the ADA because I must sue the State, and the State enjoys Eleventh Amendment immunity. Under the Federal civil rights statute – The premise of your argument appears to be we should be motivated to get around the Eleventh Amendment. And I understand the practicality of that, but I don't see how that justifies a different reading of 1983 than we give in different contexts. Well, the best answer I can give to that is that's what we civil rights lawyers do all day long. I mean, we sue individual correctional officers for shooting an inmate. I have a case that was decided in this Court called Asker that I cite in my brief. And they raised, you know, Eleventh Amendment. You're really suing the State. The Attorney General's office defends it. The State of California pays it when they lose. All true. But this Court allowed that to go forward because I sued an individual in their individual and personal capacity. Now, the Yill Law Review note I cite, and counsel pointed out that it's a note, which means a student wrote it, so I acknowledge that, says the students sometimes do pretty well here. Well, it's – I like the article because it says I should be allowed to go forward. But it also talks about – and I've always kind of thought of this as like a legal fiction. It's like you can't sue the State, but you can sue the individual. So you sue the individual. The State appears. It's the State Attorney General's office. And it's sort of like, you know, what is this really? Are we really doing this? I mean, it's kind of like a fake thing. They called it a legal fiction there. And I have to tell you, as one who's been doing this for over 26 years, I kind of agree with it. But that is our only solution we have to this, is to sue the individuals directly involved. And I cite the Asper case. It says I can do that under the Federal Civil Rights Action. And Vinson, that this Court decided, should not be allowed to apply to an employment ADA case for the simple reason that I must sue the employer, and unfortunately, I can't because the U.S. Supreme Court has said the State of California enjoys an airtight sovereign immunity in federal court. I am literally left with no other remedy but to sue under the Federal Civil Rights Act. So where you don't have the statutory scheme of the ADA applicable, I would say you should allow me this backdoor entrance. I would also just remind the Court this idea that Congress didn't want me to do this. I would say Congress probably didn't think U.S. Supreme Court would find its express abrogation of the 11th Amendment somehow invalid. I think that was a surprise to Congress. And you might say, well, they have the ability to change that. I'm not so sure they do. Once the Supreme Court ruled on that, I don't know. It's not a question of you didn't word it quite right. You should have had a comma here or a period there. It's a question of you just can't do that, period. So once we have that problem in front of us, it's either you let her sue under the Federal Civil Rights Act or here's the interesting ruling. Please understand, it's this simple. The states don't have to obey the ADA. And we all know the states are huge employers. You know, for the most part, they're pretty good actors and they do try to obey the law. But once you start saying, you know, there's this theory of no one is above the law, well, you're going to turn that on its head. Because the state will be above the law on the ADA. What's happened to the administrative proceeding? I mean, ultimately, she was found still to be disabled and the board upheld that. Was that being challenged in some fashion? It is. It's a done deal, unfortunately. We filed a petition for administrative mandate, and sadly, it lost. The Superior Court of California affirmed, denied our writ, which in effect affirmed what they did. I also have any issue preclusion effect here. I would submit that it does not, because what we're saying is what that court ruled basically was that she had a disability. And what we were arguing is a different track, which is that you should supply a reasonable accommodation. So that's a bit of a different tracker. That reasonable accommodation issue, by the way, in our record, we did a motion to augment the record to allow transcripts from that hearing, just so you know. So you actually have that part of that before you. And they argued successfully that they don't have to give a reasonable accommodation. I mean, at least they argued that that was their view of it. And I put that statement that they made before you to show you that we do have a kind of a generalized policy that says, we do not have to give reasonable accommodations on issues of granting disability or not. And I would submit that they are reading the law on that wrong. We briefed this issue in our papers here. But I would also submit that it does not have issue preclusion effect. I would just kind of leave it there. Kennedy, you've used up your time, but we'll give you a minute or two for rebuttal. I appreciate that. Thank you. Thank you, Your Honor. Your Honor, my name is Naftaz Bassi. I'm a deputy attorney for the State of California representing the Department of Transportation and the individual defendants, Cindy McKim, Dave Schaefer, and Judith Smith. Your Honor, this case actually does raise some interesting issues. But let me just correct a couple of things that were said by counsel. First of all, plaintiffs need to speak up a little bit. Sorry. Let me just clarify a couple of things which counsel for the appellate raised. One is that the plaintiff, Oku, was fired. She was never fired, Your Honor. She was a settlement under which she took disability retirement in 2003. She's had no employment relationship since 2003. And the only way she can do so is by convincing the board at CalPERS that she is fit for duty. It's her burden of proof. And once she meets that, then the Department of Transportation is bound by the agreement it made in 2003 to reinstate her. Until that point, there's no duty exists on us. Well, no duty by virtue of the settlement agreement, but there may be a duty by virtue of the ADA if it applies. That's right, if she were an employee. But she's not because she took disability retirement. Well, if you decline to hire somebody on the basis of disability, are you telling me there's no cause of action? There would be then. Well, isn't that the situation we're facing here? No, it's not, because under the settlement that she, under the agreement under which she took disability retirement, the government code states that she must prove she's fit for duty, because if she was given disability retirement, it's obviously, it's expressly understood she's not fit for duty. Therefore, to be a valid applicant, she has to show she's actually able to do the job. Well, under the ADA, she'd have to show she's a qualified individual. I'm not sure I understand how the settlement changes that. She's on disability retirement, Your Honor. And for her to apply to the same employer, which is Caltrans, she has to meet her fitness for duty, unless we waive that. But because our ---- Well, again, the premise of her ADA claim has to be that, I mean, one of the burdens of the plaintiff will have to show in an ADA claim if it's allowed to continue, is that she's a qualified individual. In effect, that she is fit for duty. So what's the significance of the settlement? I don't see how the settlement extinguishes or diminishes the ADA claim. Well, it, it, it, the, the settlement in 2003, under that, she certainly can't waive her ADA rights. Agreed. What we're saying is that she, before, let, well, let me, let me rephrase that. Let's suppose she was fit for duty. And she came for an, she came back to Caltrans. And Caltrans then violated the ADA. Sure, she'd have a claim then. But she has, she has a, because she's not a regular employee, she's on disability retirement. Are you suggesting that the fit for duty obligation is higher than the ADA's requirement that somebody be a qualified employee? Until she passes her fitness for duty, she's not qualified. And if. Good luck with that. Well, if, if she, if she were to come back to Caltrans and Caltrans would have, would have waived that. But Caltrans isn't making the decision.  Apparently CalPERS is. And CalPERS is part of this lawsuit. And part of the argument is that she's qualified and CalPERS isn't letting her back. So it seems to me we're spinning in a circle here. No. She's not qualified to work until she passes fitness for duty before CalPERS. If she does that, we are bound to take her back. That is the agreement. That's your position. That is our position. That's right. Your Honor, the counsel also raised the issue that, that she has no remedy. She either sues under the ADA directly, as she's barred by the Eleventh Amendment, or she sues under Section 83, in which case she's precluded by the ADA, which precludes Section 83 action. However, he says basically she's facing a no-win situation. But she isn't. She does actually have a state remedy. She can sue in state court under the Fair Employment Housing Act for any violation of disability or any violation of the fair employment laws. She can sue under. But that's true. It's a remedy. Instead, we didn't need the ADA at all. ADA at all. Because everybody could have sued in state court. That's right. She has a remedy in state court. You may say it's a remedy, but it's not the kind of remedy that Congress intended. Well, she can sue under the ADA in federal court. Sorry, in state court. She can sue under state laws in state court. Nothing's stopping her suing under the ADA. Isn't it possible that she could have brought an Ex parte Young claim here if she sought unjunctive relief? Yes. Yes. Ex parte Young is an exception to the Eleventh Amendment, Your Honor. It's a very narrow exception. Under Ex parte Young, you certainly can sue a state official in their official capacity for injunctive relief if that state official is actually able to carry out the injunction you require. Well, doesn't that ‑‑ if that's so, and I'm not letting you get to the end of your statement, but the ultimate end of my question is, if that's so, does the district court's statement that we have no amendment, no possible way to cure the deficiency, is that an error of law, if she could bring an Ex parte Young claim? Because as I understand it, the trial court dismissed the amended complaint without granting leave to amend. So if she could bring an Ex parte Young claim, isn't that an error of law? In her first amended complaint, she does ‑‑ she is trying to use Ex parte Young to sue the director of Caltrans in her official capacity. In our opposition, we argued that that's not applicable because Ex parte Young is a very narrow exception into which she doesn't fit because for her to meet that, for her to meet the Ex parte Young, the official that's being sued would need to have the power to do what the injunction seeks. In this case, the director simply doesn't. The director simply cannot order a reinstatement of an employee who is on disability retirement without a showing of fitness for duty. Are you sharing time with your colleague? Yes, I am. Because the time shown is the total for both of you. So if you're going to share time with your colleague, you might want to leave the stage. Thank you, Your Honor. If there are any questions. May it please the Court, Greg Valenza for the CalPERS defendants, the remaining individuals. I can answer several of the Court's questions, if I may. First, for Ex parte Young to apply, you have to have an ongoing violation of Federal law. None of the conduct that Ms. Stasbaugh, who is named as the only official capacity defendant, violates Federal law because CalPERS is not the employer of the plaintiff, and only the employer can be sued under the ADA. That's the first thing. The second thing is that Ms. Acu does not seek prospective injunctive relief. She seeks money damages and basically a retroactive suit for wrongful termination or failure to reinstate from her settlement. So that's why Ex parte Young does not apply. But the point is this Court doesn't have to get to the merits of the 1983, I mean, of the ADA suit that Judge Clifton was discussing with counsel because there is no basis for 1983 not only under Vinson, but under this Court's Allmeyer decision. If the Court believes that Title II of the ADA is different from Title I, the Court only has to look to the Allmeyer decision and see that the ADEA, the Age Discrimination and Employment Act, also an employment law, also enforced through the Title VII administrative scheme, has been found not to support Section 1983 relief. So between Vinson and Allmeyer, this Court has ample precedent to find that Section 1983 cannot be used to create a new door when the front door is closed. The Congress could have amended after Garrett to find a sufficient basis for Eleventh Amendment relief, and they did not do so. The next point is that this Court is also considering that there's no constitutional violation for Ex parte Young relief or for 1983 relief because of the rational basis standard. Disability is held on a different standard than race and sex, as the City of Cleburne case proves. So Section 1983 is foreclosed. Ex parte Young is foreclosed. The CalPERS defendants also sought qualified immunity. There is no standard that could be sufficiently clear to hold these CalPERS defendants liable under the ADA, such that qualified immunity would be abrogated. The district court may not have decided that, but this Court can. So in sum, the CalPERS defendants are entitled to judgment. There is no possible way that an amendment could cure. And in my 11 seconds I will say that this plaintiff had several remedies available to her, and the plaintiff in the Allmeyer case made the same exact argument, and this Court found that it was insufficient. And I thank you. Thank you, counsel. I appreciate the Court's willingness to give me a minute, and I would just point out paragraph 8 of our first minute. It's a minute or two, actually. Well, I'll take the two. Thank you. Paragraph 8 of the complaint, which we have in our separate appendix or clerk's excerpts at base stamp 76, does allege the ex parte relief. And I will tell you, if that is all I got, that would be huge, because I think if we could go back and just get an injunction that says, de-disable her, or whatever the right word is, you know, reinstate her, that would be a wonderful result here. Well, but if you argue that, how do we get along, how do we get around the fact that the district court may have said that, but I'm trying to figure out whether there's any harmless error? Because given your complaint doesn't even mention the allegations of fact that would suggest they're capable of performing the essential functions, and given the fact that the ALJ determined that she was substantially incapacitated from performing the usual and customary duties, I don't know why it isn't harmless. I would just point out Exhibit C and D to our first-minute complaint gives two adult psychiatric records from a Dr. Yu that says she can return to work without restrictions on original job. And I would just point out that her basic thesis was, give me a reasonable accommodation. Keep in mind, the ALJ did not rule on reasonable accommodation, thought it just didn't apply. There's where you have the vacuum right there, is nobody's really minding the store. Our simple contention is, if she continues in treatment and takes her meds, she has a good situation. And that would be the specific reasonable accommodation she should have. So any injunctive relief we have to... But what is the accommodation? You say, if she continues on treatment and takes her meds. Yes. What is the accommodation the employer has to make? Just that. In other words... He's not stopping her from continuing on treatment and taking her... No, they certainly are not. What they're saying, though, is, I don't care if you do that or not, you can't work here. So what we're saying is, let her return... Not the result of the administrative proceeding. The administrative proceeding, just so you know, the court actually, there's a quote we put in there where they said, we are not going to deal with the issue of reasonable accommodation. We're just going to say... But she's presumably taking her meds and they found that she wasn't fit for service. Reasonable accommodation doesn't enter into it. If they don't have to accommodate, you just told us they don't have to accommodate. And here's what we're saying, is that the medical proof that we could present is, if she continues with treatment and she takes her meds, she's fine. And any return to work would be, the one we're asking for, would be conditioned on that reasonable accommodation. I don't understand still what the reasonable accommodation is that you expect from the employer. All you're saying is that she's got to do something which nobody ever prevented her from doing. Why can't she just do her job taking her medications? That's not an accommodation by the employer, is it? Well, they need to allow her to return to work. You're right. She's got to do it. But right now they're saying, I don't care if you do it or not, you can't come back here. So we're saying, let her back under a condition that she do this. And I might add, this condition is very typical in like probation terms, you know, for a person to, you know, do a certain thing. It's the same idea. We'll let you back here, but you need to listen to your doctor, follow doctor's orders, continue doing what your doctor says, which she fully intends to do. But didn't she do that when she was actually working there? She tried to convince them she was, and they basically said, I don't care. That's really the nugget of our case. They're saying, I don't care. And the bottom line is, the medical proof that we would present to a trier of fact would be, if she does that, she's going to be fine. And as a reasonable accommodation, they should allow her that opportunity. That's really what we're saying under our claim. Let me ask you. She did not. Was there or wasn't there a problem with her performance at work? Oh, yeah. There were issues, definitely. The issues were more behavior, not you're not doing, she's an accountant, and it's not like your accounting work isn't up to par. It's more like conduct behavior. You know, she's got a bipolar issue, she's got a schizophrenic issue, so it's more like behavior. And people with these kind of disabilities can act out and act in a way that employers don't like. And all I'm saying is, okay, we all are in favor of safe workplaces, but let's let a person go to a doctor, take her meds, and as long as she does that and a doctor says you're okay, let her work. That's really the nugget of our claim here. Those meds don't change the conduct, do they? Well, they can. This is a medical issue, but just so you know, if you have schizophrenia and bipolar disorder and you don't take meds, we're going to read about it in the paper. You're going to commit some kind of huge crime. If you do take your meds and do your treatment, I will not say it's a guarantee of good behavior, but it reduces the probabilities way down. And people that have these big problems can get treatment and do fine, and part of the ADA is you can't just throw these people away. That's the whole point of federal law. You can't just say we're not going to let you exist. You need to let them have that reasonable accommodation. Now, if she does that and she's still in danger, that's another story, but we never got there. We didn't really get to that. And I would like the opportunity to prove to a jury that if and I would have the doctor that is attached as a C and D, Kaiser doctor, you know, he says if she takes her meds and does that, she's going to be fine, and I'd like to be able to convince a jury of that. And I'll tell you, the ALJ just didn't want to go there. He expressly said that. I am not going to consider reasonable accommodations, and that's why I submit to you that it is not a claim preclusion issue. Thank you, counsel. Thank you.
judges: Reinhardt, Clifton, Smith